UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

EDWARD G. SEABURY,            )
JANICE SEABURY, and           )
EDWARD J. SEABURY             )
                              )
          Plaintiffs,         )
     v.                       )            CIVIL ACTION
                              )            NO. 09-10622-JGD
UNITED STATES OF AMERICA,     )
                              )
          Defendant.          )

## MEMORANDUM OF DECISION AND ORDER ON DEFENDANT'S MOTION TO DISMISS

April 15, 2010

DEIN, U.S.M.J.

## I.  INTRODUCTION

This case raises the issue whether the plaintiff, Edward G. Seabury ("Seabury"), was still in the military when he received a notice that he was being ordered to active duty in Iraq.  Seabury and his parents have brought this action seeking monetary damages under the Federal Torts Claims Act ("FTCA"), 28 U.S.C. §§ 2671 *et seq.*, for the emotional distress they contend they suffered when Seabury was called for duty after his service in the military had allegedly ended.  The Government contends that at the time of the notice Seabury was in the Individual Ready Reserve ("IRR") where he remained until he subsequently resigned.  Upon his resignation, Seabury's active duty notice was revoked and he never served in Iraq.  For his part, Seabury contends that his service in the

military automatically terminated when he completed his 8-year military service obligation.

The Government has moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) on the grounds that this court lacks subject matter jurisdiction because "the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." <u>Feres v. United States</u>, 340 U.S. 135, 146, 71 S. Ct. 153, 159, 95 L. Ed. 152 (1950) ("the <u>Feres</u> Doctrine").  For the reasons detailed herein, this court finds that Seabury was still enlisted in the military at the time he received his notice to report for duty.  Therefore, this court lacks subject matter jurisdiction over this case, and the Defendant's Motion to Dismiss (Docket No. 8) is ALLOWED.

## II.  <u>STATEMENT OF FACTS</u>

"In ruling on a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), the district court must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff.  In addition, the court may consider whatever evidence has been submitted[.]" <u>Aversa v. United States</u>, 99 F.3d 1200, 1209-1210 (1st Cir. 1996) (internal citation omitted).  In the instant case, the Government has submitted numbered documents in an Appendix to its Memorandum of Law in Support of the Defendant's Motion to Dismiss (Docket No. 9) ("App. at __"), and additional documents attached to its Reply Memorandum (Docket No. 16) ("Gov't Ex. __").  The plaintiff has relied on these documents as

well, and their authenticity is not in dispute.  Therefore, the relevant facts will be derived

from the complaint (Docket No. 1) ("Compl.") and these additional materials.

### Seabury's Enrollment in the Military

Seabury is a Distinguished Military Graduate of the Army ROTC program at

Northeastern University, Boston, Massachusetts.  (Compl. ¶ 10).  On September 22,

1993, Seabury signed an Army Reserve Senior Reserve Officers' Training Corps

Scholarship Cadet Contract ("ROTC contract").  (App. at 1-9).  Pursuant to the ROTC

contract, Seabury incurred an eight-year military service obligation ("MSO"), which

included "two, three, or four years, on active duty as a commissioned officer in the U.S.

Army as prescribed by relevant Army regulations, based on the needs of the Army,

followed by service in the Reserve Components until the remainder of [his] eight-year

military obligation has been served."  (App. at 3-4, ¶¶ 3(c), (d)).  Moreover, he agreed to:

> Accept an appointment, if offered, as a commissioned officer ...
> and **not resign** such reserve appointment **before** completion of my
> original Regular Army appointment's eight anniversary date ....

(App. at 3, ¶ 3(c) (emphasis added)).

Seabury completed college, and, on June 13, 1997, was appointed as a Reserve

Commissioned Officer of the Army.  (App. at 10).  The appointment was "for an

indefinite term."  (App. at 10, ¶ 2).  This was consistent with 10 U.S.C. § 12203(c),

which provides that "Appointments of Reserves in commissioned grades are for an

indefinite term and are held during the pleasure of the president."  Seabury served on

active duty in the Army as an officer from June 13, 1997 through June 12, 2001.  (Compl.

¶ 11).  During this time Seabury rose to the rank of Captain.  (Id.).  His "Certificate of

Release or Discharge From Active Duty" lists his "reserve obligation termination date" as

May 30, 2005.  (App. at 12, block 6).

Following his release from active duty, Seabury was transferred to the Individual

Ready Reserve ("IRR").  (Compl. ¶ 11).  The IRR is defined as follows:

> A manpower pool consisting of individuals who have had training
> and have previously served in the active forces or in the Selected
> Reserve.  **The IRR consists of people who must fulfill their
> Military Service Obligation (MSO)** ..., members fulfilling a service
> obligation incurred via contract, and **those who have fulfilled their
> MSO and who voluntarily remain in the IRR.**  IRR members are
> subject to involuntary active duty (AD) for training and fulfillment
> of mobilization requirements ....

(See Compl. ¶ 15; Department of Defense Directive 1235.13 ("the Directive")[1] (emphasis

added).  The issue in this case is whether Seabury had to affirmatively resign from the

IRR, or whether his military enrollment automatically ended on May 30, 2005.  It is

undisputed that Seabury remained in the IRR at least through May 30, 2005.  (Compl.

¶ 11).  It also is undisputed that Seabury did not take affirmative actions to either remain

in or resign from the IRR until after he received his notice to report for active duty in

September 2005.  (See id. ¶ 14).

---

[1]  A copy of the Directive is attached to the Government's memorandum in support of its
motion to dismiss.  (Docket No. 9).

While in the IRR, in January 2004 and January 2005, Seabury received and completed "Army Reserve Status and Address Verification" forms which included the following provision:

> PART D:  REQUEST FOR RESIGNATION - OFFICERS ONLY.
> **NOTE: VSI RECIPIENTS WHO RESIGN THEIR COMMISSION WILL LOSE THEIR VOLUNTARY SEPARATION INCENTIVE ENTITLEMENT.**
>
> AS AN OFFICER WHO HAS COMPLETED MY 8 YEAR STATUTORY OBLIGATION, I HEREBY TENDER MY RESIGNATION.
>
> Signature of Officer                                    Date

(Gov't Exs. A & B).  Seabury did not complete this provision, nor would he have been eligible to do so prior to May 30, 2005.  The Army contends, however, that this is evidence that Seabury knew that he had to affirmatively resign from the IRR.

On July 13, 2005 and August 25, 2005, after Seabury's MSO had expired, the Army contacted Seabury concerning assignment opportunities.  (Gov't Ex. C).  Seabury's status in the military was apparently not discussed.  On July 16, 2005, the Army enacted a revised Department of Defense Directive 1235.13.[2]  The Directive provided in part that "Officers who have fulfilled their MSO and have not taken action to elect to remain in the IRR shall be advised of the requirement to remove them from the military . . . ."  (Direc-

---

[2]  This Directive was apparently revised in response to the decision in Parrish v. Brownlee, 335 F. Supp. 2d 661 (E.D.N.C. 2004), discussed infra, which held that there is no automatic discharge when an IRR commissioned officer's MSO expires.  (See Gov't Reply (Docket No. 16) at 3).

tive § 4.5; see Compl. ¶ 16).  The Army first notified Seabury of this Directive on

November 10, 2005.  (Gov't Ex. C at 2).

Meanwhile, on September 7, 2005, the Army sent orders to Seabury to report to

active duty on October 9, 2005, for service in Iraq for 545 days unless extended for a

longer period.  (Compl. ¶ 18).  At the time, Seabury was working full-time during the day

as an Account Executive at Federal Express Corporation, and was attending law school at

night.  (Id. ¶¶ 19, 21).  The fact that he was called to active duty, and the efforts the

military allegedly undertook to convince him to comply with these orders, including

threats that he would face a prison sentence if he disobeyed, form the basis for the

emotional distress claims of Seabury and his parents.  (Id. ¶¶ 22-40).

On September 12, 2005, Seabury sent a request to the U.S. Army Human

Resources Command seeking "an IRR exemption from involuntary active duty" on the

grounds of "extreme personal hardship."  (App. at 17).  Similarly, by document dated

September 14, 2005, Seabury requested "an exemption until the completion of my studies

which are estimated to conclude in May of 2009."  (App. at 18).  Neither of these

documents indicated that Seabury believed that his military service had concluded.  On

September 27, 2005 Seabury, through counsel, submitted an "Appeal to the Delay and

Exemption Board" requesting that he be exempt from active duty.  (App. at 20).  Therein,

Seabury claimed that he was a "civilian" as his military service had ended on May 30,

2005.  (App. at 20-31).

Seabury's report date was extended to December 11, 2005.  (<u>See</u> Gov't Ex. C at 9/27/05 entry; App. at 32 (order dated December 1, 2005)).  On November 10, 2005, the Army left Seabury a telephone message concerning the new Directive.  (Gov't Ex. C).  On November 14, 2005, the Army and Seabury had a telephone conversation about the Directive.  (<u>Id.</u>).  According to the Army's notes of the conversation, Seabury "chose to resign his commission" and was "faxed a copy of the resignation letter" to complete.  (<u>Id.</u>).  Seabury declined to sign the form resignation letter, but sent his own letter dated December 2, 2005.  (App. at 33).  Therein he asserted that he had not "positively elected" to remain in the IRR as referenced in the Directive.  He wrote further:

> I request that I be removed from the IRR immediately, effective as of the last day of my Military Service Obligation, which expired in May 2005 and that any orders requiring that I report to active duty be revoked.

(<u>Id.</u>).  On January 5, 2006, the Army notified Seabury that his "request for resignation has been received and approved[,]" that as a result, his "mobilization orders will be revoked" but that "there will be a delay in processing [his] discharge."  (App. at 34).  On January 6, 2006, Seabury's order to active duty was revoked.  (App. at 35).  He was honorably discharged from the Army Reserve on April 4, 2006.  (App. at 36).

On August 30, 2007, plaintiffs filed an administrative FTCA claim with the Army seeking in excess of $1,000,000.00 in emotional distress damages.  (App. at 37-46).  The claims were denied on October 23, 2008 as being barred by the <u>Feres</u> Doctrine.  (App. at 47).  This suit followed.

Additional facts will be provided below where appropriate.

### III.  ANALYSIS

#### A.  Motion to Dismiss Standard of Review

"The proper vehicle for challenging a court's subject-matter jurisdiction is Federal Rule of Civil Procedure 12(b)(1)."  Valentin v. Hosp. Bella Vista, 254 F.3d 358, 362 (1st Cir. 2001).  As detailed above, "[i]n ruling on a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), the district court must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff.  In addition, the court may consider whatever evidence has been submitted, such as the . . . exhibits submitted in this case."  Aversa v. United States, 99 F.3d at 1209-1210 (internal citations omitted).  The plaintiff bears the burden of proving jurisdiction.  Gill v. U.S., No. 05-10309-MLW, 2009 WL 3152892, at *3. (D. Mass. Sept. 25, 2009).  "Hence, if the plaintiff fails to show a basis for either diversity or federal question jurisdiction, the district court must grant the defendant's Rule 12(b)(1) motion."  One Commc'ns Corp. v. Sprint Nextel Corp., 495 F. Supp. 2d. 219, 223 (D. Mass. 2007).

Applying these principles to the instant case compels the conclusion that the motion to dismiss be allowed.

**B.**     **The Feres Doctrine**

The United States, as sovereign, cannot be sued without its consent.  See Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995).  "Jurisdiction must be found in an express Congressional waiver of immunity or consent to be sued."  Id.  Under the FTCA, the United States has consented to being sued " for damages for personal injury caused by the negligent or wrongful act or omission of a federal employee while acting within the scope of his employment, provided that in the same circumstances a private employer would be liable for the acts of his employee under the local law."  Day v. Mass. Air Nat'l Guard, 167 F.3d 678, 681 (1st Cir. 1999) (internal citations and quotations omitted). While no explicit exception in the FTCA bars claims by or against military personnel, the United States Supreme Court determined in Feres that the FTCA does not permit suits against the United States that involve "injuries to servicemen where the injuries arise out of or are in the course of activity incident to service."  Id. (quoting Feres, 340 U.S. at 146, 71 S. Ct. at 159).  This bar also applies to derivative loss of consortium claims.  See De Font v. United States, 453 F.2d 1239, 1240 (1st Cir. 1972).  "Courts have identified a number of justifications for the doctrine.  One of the most often cited justifications is that, absent the Feres doctrine, the judiciary would become ensnared in sensitive military affairs at the expense of military discipline and effectiveness."  Diaz-Romero v. Mukasey, 514 F.3d 115, 118 (1st Cir. 2008) (internal quotation and citation omitted).

In the instant case, the parties agree that if Seabury remained in the IRR upon completion of his MSO, the plaintiffs' claims are all barred by the Feres Doctrine.  For

the reasons detailed below, this court concludes that Seabury was still in the military at the time his orders came to serve in Iraq.

### C.   Seabury's Term of Service in the Army

This court concludes that the statutory scheme, Seabury's own contracts and the Army's own directives compel the conclusion that although the "plaintiff was not required to serve in the Army beyond his eight year military obligation, there is no corresponding obligation to the Army to discharge plaintiff automatically or to [immediately] seek affirmation of a desire of continued service." Parrish v. Brownlee, 335 F. Supp. 2d 661, 673 (E.D.N.C. 2004).  Rather, "[u]nder statutes and regulations governing the status of commissioned officers, plaintiff, as an officer in the IRR who did not resign his commission upon completion of his MSO, remained under the jurisdiction of the Army and subject to call to active duty." Id. at 669.

This court finds the analysis of Parrish persuasive and applicable to the instant case.  In Parrish, like the instant case, the issue presented was whether an officer in the IRR who did not affirmatively resign after he completed his MSO remained in the military and could be called to active duty.  With the exception of the Directive, which was apparently amended in response to Parrish,[3] both Parrish and Seabury received substantially the same forms from the Army, signed the same contracts and were subject

---

[3]  The Parrish court cites to Defense Directive 1235.13, but to an earlier version than the July 16, 2005 Directive at issue in the instant case.  See Parrish, 335 F. Supp. 2d at 670.  (See Gov't Reply at 3 (¶ 4.5 of Directive 1235.13 implemented in light of Parrish)).

to the same regulations.  For the reasons detailed in <u>Parrish</u>, this court concludes that Seabury needed to take affirmative actions to resign from the IRR; his severance from the military was not automatic.

Briefly, this court finds controlling the fact that when Seabury accepted his appointment as a commissioned officer, his appointment was explicitly made "for an indefinite term."  (App. at 10, ¶ 2).  This was consistent with the statutory scheme, which provided that "appointments of reserves in commissioned grades are for an indefinite term and are held during the pleasure of the president."  10 U.S.C. § 12203(c).  In fact, by statute "[a]n officer of a reserve component who has at least five years of service as a commissioned officer <u>may not be separated from that component without his consent</u>," except in circumstances, generally of misconduct, which are not applicable here.  10 U.S.C. § 12683 (emphasis added).  Remaining in the IRR provides an officer with various retirement, job and educational benefits, among other things.  <u>See</u> <u>Parrish</u>, 335 F. Supp. 2d at 664.  Therefore, the statutory scheme is designed to provide for continued service absent an affirmative and consensual act of the officer.

Similarly, Seabury's communications with the military, like Parrish's, put him on notice that an affirmative act was necessary to separate Seabury from the IRR.  For example, when Seabury (like Parrish) signed his ROTC contract, he agreed that if he accepted an appointment as a commissioned officer, he would not resign <u>before</u> he completed his eight years of service.  (App. at 3, ¶ 3(c)).  This put him on notice that some affirmative action would be necessary to separate him from the military.  The Army

Reserve Status and Address Verification Forms (Gov't Exs. A & B) expressly gave the officer who had completed his/her eight year statutory obligation the opportunity to resign from the military.  Significantly, none of the documents ask the officer to affirmatively commit to remaining in the military.  Accordingly, the clear import is that you remain in, unless you affirmatively opt out.  For these and the other reasons detailed in <u>Parrish</u>, this court finds that Seabury's commission did not automatically expire at the end of his eight year MSO.

Seabury has attempted to distinguish <u>Parrish</u> on the grounds that Parrish "had voluntarily remained in the Individual Ready Reserve after his military service ended." (Opp. (Docket No. 12) at 4).  However, Parrish did not affirmatively represent that he was consenting to remain in the military after his MSO ended.  Parrish did not take advantage of any of the benefits available to IRR officers after his MSO expired.  <u>Parrish</u>, 335 F. Supp. 2d at 664.  While he returned some forms, Parrish did not intend to remain in the military.  <u>See id.</u> at 666.  He did not affirmatively resign until ordered to report for active duty.  <u>Id.</u>  Thus, Parrish's communications with the military concerning his continued status in the IRR were not qualitatively different than Seabury's communications.  Seabury received several notices of posting and training options after his MSO concluded without informing the Army that he was no longer affiliated with the military.  <u>Parrish</u> is not distinguishable on the grounds that the plaintiff in that case "voluntarily" remained with the IRR.

The post-<u>Parrish</u> amendment to the Directive did not change the fact that as a result of Seabury's failure to resign he remained in the IRR.  Thus, the Directive provides:

> 4.5  Officers who have fulfilled their MSO and have not taken action to elect to remain in the IRR <u>shall be advised of the requirement to remove them from the military</u>.  The Military Departments shall remove those officers from the military <u>within 2 years after fulfillment of the officer's MSO</u> unless they positively elect to remain in the IRR past their MSO.

(emphasis added).  As an initial matter, the Directive was not adopted until after Seabury's MSO had expired.  Even more significantly, the MSO does not set a date as to when the officers have to be advised of anything.[4]  Rather, the Directive provides that sometime within a two year period officers need to be informed of the Directive and, if the officer does not elect to remain in the military, the officer will be removed from service.  This is a significant change in that the officer's silence will not result in his or her endless affiliation with the military.  Rather, silence would only result in the officer remaining in the IRR for, at most, two years.  Finally, the Directive requires that the officer "be advised of the requirement to remove them from the military," <u>i.e.</u>, that if they are not affirmatively removed from the military they will remain in the IRR.  In short, the

---

[4]  In any event, Seabury was advised of the Directive in November 2005, within four months of its effective date.  Such notice clearly was not untimely as a matter of law.

new Directive does not alter the fact that officers will remain in the military (for up to two years) if they are not removed from the military.[5]

Finally, Seabury relies on the case of <u>Valn v. United States</u>, 708 F.2d 116 (3d Cir. 1983), where the court reversed the dismissal of an action brought under the FTCA seeking "monetary damages against the United States for a series of alleged negligent and wrongful acts that resulted in [the plaintiff's] involuntary activation into the military and his imprisonment for refusing to submit to military authority." <u>Id.</u> at 117.  In <u>Valn</u>, the court held the <u>Feres</u> Doctrine inapplicable because the conduct complained of occurred after Valn had been honorably discharged from the military.  <u>Id.</u> at 119-20.  This discharge "terminated any and all obligations he then had to the United States Army or to the Delaware National Guard." <u>Id.</u> at 117.  Therefore, Valn was "a *civilian* suing the government for injuries arising out of its dealings with Valn as a private citizen" and not "a *soldier* suing his military superiors for injuries arising out of or in the course of military duty[.]" <u>Id.</u> at 120 (emphasis in original).  The obvious and critical difference between <u>Valn</u> and the instant case is that Seabury was not discharged from the military before his resignation was accepted.

---

[5] Seabury does not explain how his interpretation that an officer is automatically discharged from the military at the conclusion of his or her MSO can be reconciled with 10 U.S.C. § 12683, which precludes an officer with five years of service from being separated from the military "without his consent[.]"

## IV.  CONCLUSION

For all the reasons detailed herein, this court finds that Seabury was still in the military when he received his notice to appear for active duty.  Therefore, the <u>Feres</u> Doctrine applies and this court lacks subject matter jurisdiction over the dispute.  The "Defendant's Motion to Dismiss" (Docket No. 8) is ALLOWED.

   / s / Judith Gail Dein

Judith Gail Dein
United States Magistrate Judge
